# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, STATE OF COLORADO<br>Court Address:  270 S. Tejon Street<br>              Colorado Springs, CO  80903 | |
| PLAINTIFF:<br>KARL LIPPARD, an individual,<br>v.<br>DEFENDANTS:<br>STURM, RUGER & CO., INC., a Delaware Corporation; STEVEN M. MAYNARD, an individual. | ↑ COURT USE ONLY ↑ |
| Attorneys for Plaintiff<br>Erin M. Jensen, #39449<br>Eric S. Howard, #36432<br>Howard & Jensen LLC<br>1755 Telstar Drive, Suite 501<br>Colorado Springs, CO  80920<br>Tel:   (719) 362-5560<br>Fax:  (800) 584-9002<br>Email:     ejensen@howardandjensen.com<br>            ehoward@howardandjensen.com | Case Number: 2010CV1483<br><br>Div.: 13 |
| **SUMMONS** | |

The People of the State of Colorado
To the Defendants named above:

You are summoned and required to file with the clerk of this court an answer or to otherwise respond to the attached First Amended Complaint within twenty (20) days after this summons is served on you in the State of Colorado, or within thirty (30) days after this summons is served on you outside the State of Colorado.

If you fail to file your answer or other response to the First Amended Complaint in writing within the applicable time period, judgment by default may be entered against you by the court for the relief demanded in the First Amended Complaint, without any further notice to you.

WCS - 029935/000014 - 126482 v1

The following documents are also served with this summons:

(A) FIRST AMENDED COMPLAINT;
(B) NOTICE OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL; and
(C) DISTRICT COURT CIVIL CASE COVER SHEET

DATED this 14th day of April, 2010.

        HOWARD & JENSEN LLC

        *Original Signature of Erin M. Jensen*
        *on file at the offices of Howard & Jensen LLC*

        s/ Erin M. Jensen
        Erin M. Jensen, #39449
        Eric S. Howard, #36432
        Howard & Jensen LLC
        1755 Telstar Drive, Suite 501
        Colorado Springs, CO 80920

2

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, STATE OF COLORADO<br>Court Address:  270 S. Tejon Street<br>  Colorado Springs, CO 80903 | EFILED Document<br>CO El Paso County District Court 4th JD<br>Filing Date: Apr 14 2010 11:42PM MDT<br>Filing ID: 30590467<br>Review Clerk: Rachael Maestas |
| PLAINTIFF:<br><br>KARL LIPPARD, an individual,<br><br>v.<br><br>DEFENDANTS:<br><br>STURM, RUGER & CO., INC., a Delaware Corporation; STEVEN M. MAYNARD, an individual. | ↑ COURT USE ONLY ↑ |
| Attorneys for Plaintiff<br>Erin M. Jensen, #39449<br>Eric S. Howard, # 36432<br>Howard & Jensen LLC<br>1755 Telstar Drive, Suite 501<br>Colorado Springs, CO 80920<br>Tel:   (719) 362-5560<br>Fax:  (800) 584-9002<br>Email:   ejensen@howardandjensen.com<br>    ehoward@howardandjensen.com | Case Number: 2010CV1483<br><br>Div.: 13 |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Karl Lippard ("Lippard"), by and through his counsel, Howard & Jensen LLC, hereby files his first amended complaint against Defendants as follows:

### PARTIES, JURISDICTION AND VENUE

1. Lippard is an individual and resident of the State of Colorado with his primary residence at 3259 Electra Drive South, Colorado Springs, Colorado 80906.

2. Upon information and belief, Defendant Sturm, Ruger & Co., Inc. ("Ruger") is a Delaware Corporation with its principal place of business at 1 Lacey Place, Southport, Connecticut 06890.

3. Upon information and belief, Defendant Steven M. Maynard ("Maynard") is an individual and resident of the State of Connecticut. Upon information and belief, Maynard is a Vice President of multiple divisions of Ruger and a significant shareholder of Ruger.

4. The events giving rise to the claims asserted in this action occurred in El Paso County, Colorado.

5. This Court has subject matter jurisdiction over this action pursuant to the Colorado Constitution, Article VI, § 9(1).

6. This Court has, for the reasons set forth below, both general and specific personal jurisdiction over Ruger pursuant to C.R.S. § 13-1-124.

7. This Court has, for the reasons set forth below, at least specific personal jurisdiction over Maynard pursuant to C.R.S. §13-1-124.

8. Venue in this Court is proper pursuant to C.R.C.P. 98.

## GENERAL ALLEGATIONS

9. Lippard is a gun designer who holds numerous firearms-related patents.

10. Ruger is a large, publicly traded firearms manufacturer with approximately $160,000,000 in annual revenues.

11. Prior to October 2009, Ruger attempted to hire Lippard on at least two separate occasions.

12. Maynard, Vice President of Ruger, contacted Lippard in or about October 2009 expressing Ruger's interest in Lippard's firearms patent portfolio.

13. During this initial conversation, Maynard identified himself as a Vice President and Chief Engineer of Ruger and indicated that Ruger's Chairman of the Board instructed him to contact Lippard and schedule a visit to Colorado Springs to evaluate Lippard's intellectual property for the potential purchase or licensing of Lippard's intellectual property.

14. On or about November 4, 2009, Maynard flew to Colorado Springs to meet with Lippard to discuss the potential for Ruger entering into a business relationship with Lippard.

15. Lippard picked Maynard up at the Colorado Springs Airport and Lippard began showing and explaining to Maynard all of his intellectual property which was for sale or licensing.

16. Lippard walked Maynard through the design, uniqueness, and marketability of several of Lippard's firearms including, but not limited to, showing Maynard the internal components of certain firearms.

17. At Maynard's request, Lippard gave Maynard copies of all of Lippard's firearms-related patents and patents pending so that Maynard could review them overnight including, without limitation: (a) Semiautomatic Barrel Linkage, United States Patent Application Serial No. 12/106,284; (b) Process for Manufacturing Double Barrel Shotgun Barrels, and the Resulting Double Barrels, United States Patent Application Serial Nos. 11/344,493, 12/134,082;

(c) Handgun System, United States Patent Application Serial No. 12/509,322; (d) Modular Custom Weapon Stock Manufacturing, United States Patent Application Serial No. 12/272,713; (e) Interchangeable Scope Mount, United States Patent Application Serial No. 12/352,427; and (f) Manufacturing Process of a Unitary Barrel, Chamber and Action for a Firearm, United States Patent Provisional Application Serial No. 61/225,781 (collectively, the "Patents").

18. Maynard and Lippard continued their business discussions the following morning at breakfast. Maynard stated that he had read all of the Patents and proceeded to comment on, and ask questions about, various details of certain Patents.

19. Maynard stated Ruger had no 1911-style handgun, but wanted to enter that market and particularly Ruger wanted to target the police and military markets with a 1911-style handgun.

20. Thereafter, Maynard and Lippard engaged in detailed discussions regarding Lippard's NCO Combat 1911-Pistol ("Combat NCO") and Ruger's desire to purchase or license the Combat NCO. They also discussed the millions of dollars in new revenue that the Combat NCO could bring to Ruger.

21. Maynard and Lippard engaged in detailed discussions regarding Lippard's SolidRifle technology and Ruger's desire to purchase or license the SolidRifle technology. They also briefly discussed Lippard's SolidPistol technology and how a SolidPistol could be manufactured for 75% less than existing Ruger products.

22. Lippard and Maynard also engaged in detailed discussions regarding Lippard's MonoSolid Barrels and Ruger's desire to purchase or license the MonoSolid Barrels. Among other things, Lippard provided Maynard with a document listing the eight types of Solid Barrels and their respective monetary value and work production. A copy of this document is attached as **Exhibit A**. Maynard stated that Ruger could produce MonoSolid Barrels by opening one of Ruger's Pine Tree Castings facilities in Colorado Springs so that Lippard could oversee Ruger's production of the MonoSolid Barrels.

23. Lippard and Maynard also engaged in detailed discussions regarding Lippard's woodworking technology for firearm stocks and Ruger's desire to purchase or license the same.

24. Lippard and Maynard also engaged in detailed discussions regarding Lippard's revolver designs and Ruger's desire to purchase or license the same.

25. Maynard asked Lippard to consider converting one of Lippard's gun manufacturing companies into Ruger's custom gun shop since Ruger currently has no custom shop. They also discussed a possible plan of building a large Ruger facility in Colorado Springs to host the U.S. Olympic Shooting Team.

26. Lippard demonstrated to Maynard his proprietary assembly station rolling cabinet system of interchangeable parts for firearms assembly.

27. Lippard also showed Maynard a drawing of his proprietary double rifle system and adjustable impact system to accommodate different ammunition.

28. After Maynard stated the Ruger did not have a well regarded trigger system, Lippard showed Maynard a drawing of his proprietary trigger system.

29. Lippard also showed Maynard various other proprietary and/or patentable intellectual property.

30. Maynard stated that Ruger was interested in purchasing all of Lippard's intellectual property including, but not limited to, the Patents. The purchase price quoted to Maynard for all of Lippard's Patents was $20,000,000 plus royalties.

31. Maynard asked Lippard how much it would cost for an exclusive six month first-right-of-refusal option to purchase or license Lippard's Patents.

32. Lippard stated that he would be willing to provide such an option to Ruger for a reduced price of $150,000 since Maynard stated that Ruger was very interested in purchasing or licensing all of Lippard's Patents and was immediately ready to do so.

33. Maynard stated that Ruger suffered from untrained engineers and that Ruger had been looking to hire a head firearms designer/inventor for the past two years without success. Maynard also said that Lippard was a rare person in that he had a diversity of patents and designs, but was also fluent in marketing, sales, production, distribution and engineering.

34. Maynard also stated that Lippard could contribute significantly to Ruger by, among other things, training its engineers in CAD/CAM methods and arms design.

35. Maynard and Lippard also discussed, in detail, how Lippard could assist Ruger in its production and marketing of firearms. Maynard requested that Lippard visit the Ruger factories so that Lippard could see firsthand the problems Ruger was experiencing. Lippard responded by stating that he would be happy to visit Ruger's factories if Ruger retained Lippard as a consultant.

36. Lippard told Maynard that he could be retained by Ruger as an exclusive consultant by paying an initial non-refundable fee of $35,000.

37. Ultimately, Maynard, on behalf of Ruger, offered Lippard a contract for: (a) an exclusive six month first-right-of-refusal option to purchase or license Lippard's Patents at the cost of $150,000; and (b) an exclusive consultant position with Ruger for a $35,000 initial non-refundable fee with an hourly rate of $450 (collectively, the "Offer").

38. Maynard stated that full payment from Ruger could not be completed that day because he did not bring a company check with him to Colorado Springs.

39. Therefore, Lippard and Maynard agreed to Ruger's immediate payment of $100 cash with the remaining Contract balance of $184,900 to be paid by wire transfer or check upon Maynard's return to Connecticut. Maynard paid Lippard $100 cash and Lippard, in return, gave Maynard a receipt evidencing the same.

40. Lippard accepted the Offer, forming a binding contract ("Contract").

41. Maynard reduced the essential terms of the Contract to writing on Lippard's dry-erase board. A photograph of this writing is attached as <u>Exhibit B</u>. Maynard also copied the essential terms of the Contract into his day timer.

42. Shortly thereafter, Lippard received communications from third-parties expressing serious interest in portions of Lippard's Patents covered by the Contract. Lippard informed these third-parties that Ruger had just purchased a first-right-of-refusal option on all of his Patents. Lippard then asked Maynard for instruction on how to proceed with the inquiring third-parties.

43. On or about November 8, 2009, Maynard and Ruger informed Lippard that Ruger did not intend to fulfill its obligations under the Contract and refused to pay Lippard the remaining Contract balance due of $184,900.

44. Ruger has subsequently claimed that Maynard, its Vice President, did not have authority to enter into the Contract with Lippard on Ruger's behalf.

## FIRST CLAIM FOR RELIEF
(Breach of Contract against Ruger)

45. Lippard incorporates the preceding paragraphs as if fully set forth herein.

46. Lippard has performed all of his obligations under the Contract.

47. Ruger breached the Contract by failing to perform its obligation under the Contract including, without limitation, failing to make required payments.

48. As a direct and proximate result of Ruger's breach of the Contract, Lippard has incurred damages in an amount to be proven at trial, and Ruger is liable for such amount.

WHEREFORE, Lippard prays for relief as stated below.

## SECOND CLAIM FOR RELIEF
(Promissory Estoppel against Ruger)

49. Lippard incorporates the preceding paragraphs as if fully set forth herein.

50. Ruger promised Lippard, among other things, to: (a) purchase an exclusive six month first-right-of-refusal option to purchase or license Lippard's Patents at the price of $150,000; and (b) pay an initial non-refundable fee of $35,000 to secure Lippard as an exclusive consultant to Ruger.

51. Ruger should reasonably have expected that its promises would induce action or forbearance by Lippard.

52. Lippard reasonably relied on Ruger's promises to his detriment.

53. Ruger's promises must be enforced to prevent substantial injustice.

54. As a result of Ruger's actions, Lippard has suffered damages in an amount to be proven at trial.

WHEREFORE, Lippard prays for relief as stated below.

### THIRD CLAIM FOR RELIEF
(In the Alternative, Breach of Contract against Maynard)

55. Lippard incorporates the preceding paragraphs as if fully set forth herein.

56. To the extent Maynard did not have authority to bind Ruger to the Contract, Maynard is personally liable to Lippard for damages incurred for breach of the Contract.

57. As a result of Maynard's actions, Lippard has suffered damages in an amount to be proven at trial.

WHEREFORE, Lippard prays for relief as stated below.

### FOURTH CLAIM FOR RELIEF
(In the Alternative, Promissory Estoppel against Maynard)

58. Lippard incorporates the preceding paragraphs as if fully set forth herein.

59. To the extent Maynard did not have authority to make promises on Ruger's behalf, Maynard is personally liable to Lippard.

60. As a result of Maynard's actions, Lippard has suffered damages in an amount to be proven at trial.

WHEREFORE, Lippard prays for relief as stated below.

### FIFTH CLAIM FOR RELIEF
(In the Alternative, Fraud against Ruger and Maynard)

61. Lippard incorporates the preceding paragraphs as if fully set forth herein.

62. To the extent Maynard did not have authority to bind Ruger to the Contract and/or to make promises on Ruger's behalf, Maynard and Ruger defrauded Lippard through false representations and/or fraudulent concealment.

63. Ruger and Maynard both made false representations to Lippard and/or concealed from Lippard material facts concerning Maynard's authority to bind Ruger to the Contract and/or make promises on Ruger's behalf.

64. These misrepresentations and/or concealments were material.

65. Ruger and Maynard made these misrepresentations and/or concealments knowingly.

66.     Ruger and Maynard made these misrepresentations with the intent that Lippard would rely on them.

67.     Lippard justifiably relied on these misrepresentations which damaged Lippard in an amount to be proven at trial.

WHEREFORE, Lippard prays for relief as stated below.

### SIXTH CLAIM FOR RELIEF
(In the Alternative, Negligent Misrepresentation against Ruger and Maynard)

68.     Lippard incorporates the preceding paragraphs as if fully set forth herein.

69.     To the extent Maynard did not have authority to bind Ruger to the Contract and/or to make promises on Ruger's behalf, Maynard and Ruger made negligent misrepresentations to Lippard through false representations and/or false statements.

70.     Ruger and Maynard made these misrepresentations in the course of their business and/or in transactions in which Lippard had a financial interest.

71.     Ruger and Maynard also made these misrepresentations to Lippard for the guidance or use of Lippard in a business transaction and were negligent in communicating such information.

72.     Ruger and Maynard made these misrepresentations with the intent or knowledge that Lippard would act or refrain from acting in reliance on the misrepresentations.

73.     Lippard reasonably relied on these misrepresentations which damaged Lippard in an amount to be proven at trial.

WHEREFORE, Lippard prays for relief as stated below.

### PRAYER FOR RELIEF

WHEREFORE, Lippard requests that judgment be entered as follows:

(a)     That Lippard recover all of his damages from Ruger, or in the alternative from Maynard, for breach of the Contract;

(b)     That Lippard recover all of his damages from Ruger, or in the alternative from Maynard, resulting from the failure to fulfill promises made to Lippard;

(c)     That Ruger, or in the alternative Maynard, specifically perform the promises made to Lippard;

(d)     That Lippard recover all of his damages from Ruger and Maynard resulting from their fraud;

(e) That Lippard recover all of his damages from Ruger and Maynard resulting from their negligent misrepresentation;

(f) That Lippard recover from Ruger and/or Maynard, pre-judgment and post-judgment interest at the applicable rates;

(g) That Lippard recover from Ruger and/or Maynard his costs;

(h) That Lippard recover from Ruger and/or Maynard his attorneys' fees as provided by contract and/or applicable statute; and

(i) Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to C.R.C.P. 38, Lippard demands a jury trial on all issues so triable.

Dated this 14th day of April, 2010.

HOGAN & HARTSON LLP.

*Original Signature of Erin M. Jensen*
*on file at Howard & Jensen LLC*

s/ Erin M. Jensen
Erin M. Jensen, #39449
Eric S. Howard, # 36432
Howard & Jensen LLC
1755 Telstar Drive, Suite 501
Colorado Springs, CO  80920

*ATTORNEYS FOR PLAINTIFF KARL LIPPARD*

Plaintiff's Address
3259 Electra Drive South
Colorado Springs, Colorado 80906

# EXHIBIT A

## TO

## FIRST AMENDED COMPLAINT

## Barrels Types Defined:

1. SS Models:  SolidSolid Over/Under or SxS of all types. Shotgun O/U, SxS. Double Rifle O/U & SxS. Single barrels. Annual consumption to 10,000 units @ $6,500 to $8,000 per year. Cost about $1,250 to $2,500, each.

2. M Models   MonoSolid Over/Under and SxS of all types. Shotgun, Rifle, Pistol, MTR. Annual consumption about 4 million @ $4,000 with a cost of $1,000, each

3. C Models   Composites of all types. Rifle, Pistol and Mtr  These are super light and are for the future projectiles and firearm designs currently being explored. Annual estimate 3 million. Profit margin 3 times cost to 25 times on pistols.

4. T Models    Tubes of all types. Shotgun, Rifle, Pistol, new and used, and MTR. About 3 million units at 25 times cost.

5. X Models:   Sleeves for barrels of all types. All firearms, cannons, and Mtr. About 10 million guns effected.

6. S Models:   Screw barrels of all types. Shotgun, single, O/U, SxS, current, and MTR past and future. About 2 million possible tubes that reduce the cost of replacement to 10 - 20 times cost profit margins

7. R Models:   Rifled barrels of all types. Solid/Rifle, 2 piece rifle, past and present. An open market with no competitors. A cost reduction of 60%.

8. Mtr. Models: Are all military barrels from small to large caliber of all types. Pistol, Rifle, Cannon, Mortar, Artillery pieces. Government replacement or alteration of existing uniforms. 5 million to 15 million weapons come under this classification.

These barrels replace, repair and supply the future needs of barrel product in all categories. Current estimation is 10 million barrels per year annual consumption. However, the application is so vast with the quantity of obsolete existing barrels all the way to military service, that the number is beyond 100 million units of all types. With the ammunition in combination with the C Models, in the MTR category, applies new technology to current and future military thinking with battlefield applications of weapons, the rules of war change

# EXHIBIT B

## TO

## FIRST AMENDED COMPLAINT



04/16/2010 FRI 14:20 [JOB NO. 8946] ☒015

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, STATE OF COLORADO<br>Court Address: 270 S. Tejon Street<br>Colorado Springs, CO 80903 | EFILED Document<br>CO El Paso County District Court 4th JD<br>Filing Date: Apr 14 2010 11:42AM MDT<br>Filing ID: 30574867<br>Review Clerk: Donna Macs |
| **PLAINTIFF:**<br>KARL LIPPARD, an individual,<br>v.<br>**DEFENDANTS:**<br>STURM, RUGER & CO., INC., a Delaware Corporation; STEVEN M. MAYNARD, an individual. | ↑ COURT USE ONLY ↑ |
| Attorney for Plaintiff<br>Erin M. Jensen, #39449<br>Eric S. Howard, # 36432<br>Howard & Jensen LLC<br>1755 Telstar Drive, Suite 501<br>Colorado Springs, CO 80920<br>Tel: (719) 362-5560<br>Fax: (800) 584-9002<br>Email: ejensen@howardandjensen.com<br>ehoward@howardandjensen.com | Case Number: 2010CV1483<br>Div.: 13 |
| **NOTICE OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL** | |

NOTICE IS HEREBY GIVEN that Erin M. Jensen and Hogan & Hartson LLP, counsel for Plaintiff Karl Lippard, hereby provide notice of their withdrawal as attorneys of record in the above-captioned case for Karl Lippard.

FURTHER NOTICE IS HEREBY GIVEN that Erin M. Jensen, Eric S. Howard, and the law firm Howard & Jensen LLC, hereby enter their appearance as attorneys of record for Plaintiff Karl Lippard in the above-captioned action, and all future pleadings, orders, correspondence and other communications should be directed to:

Erin M. Jensen, #39449
Eric S. Howard, #36432
HOWARD & JENSEN LLC
1755 Telstar Drive, Suite 501
Colorado Springs, CO 80920
Phone: (719) 362-5560
E-mail:    ejensen@howardandjensen.com
           ehoward@howardandjensen.com

In accordance with C.R.C.P. 121 § 1-1, 2(a), this withdrawal and substitution does not require leave of this court.

DATED this 9th day of April, 2010.
           14th

                              HOWARD & JENSEN LLC

                              *Original signature of Erin M. Jensen on file at Howard & Jensen LLC*

                              s/ Erin M. Jensen
                              Erin M. Jensen #39449
                              Eric S. Howard, #36432
                              1755 Telstar Drive, Suite 501
                              Colorado Springs, CO 80920
                              (719) 362-5560

\\\CS - 029935/000014 - 127772 v1

2

04/16/2010 FRI 14:20   [JOB NO. 8946]   ☒017

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, STATE OF COLORADO<br>Court Address:  270 S. Tejon Street<br>    Colorado Springs, CO  80903 | EFILED Document<br>CO El Paso County District Court 4th JD<br>Filing Date: Feb 19 2010 3:20PM MST<br>Filing ID: 29661896<br>Review Clerk: Rachael Maestas |
| **PLAINTIFF:**<br><br>KARL LIPPARD, an individual,<br><br>v.<br><br>**DEFENDANTS:**<br><br>STURM, RUGER & CO., INC., a Delaware Corporation; STEVEN M. MAYNARD, an individual. | ↑ COURT USE ONLY ↑ |
| <u>Attorney for Plaintiff</u><br>Erin M. Jensen, #39449<br>Eric S. Howard, # 36432<br>HOGAN & HARTSON LLP<br>Two North Cascade Avenue, Suite 1300<br>Colorado Springs, CO  80903<br>Tel:   (719) 448-5900<br>Fax:  (719) 448-5922<br>Email:    emjensen@hhlaw.com<br>    eshoward@hhlaw.com | Case Number: _____<br><br>Div.: ___ |

**DISTRICT COURT CIVIL CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.

2. Check the boxes applicable to this case.

☐ Simplified Procedure under C.R.C.P. 16.1 **applies** to this case because this party does not seek a monetary judgment in excess of $100,000.00 against another party, including any attorney fees, penalties or punitive damages but excluding interest and costs and because this case is not a class action or forcible entry and detainer, Rule 106, Rule 120, or other expedited proceeding.

☒ Simplified Procedure under C.R.C.P. 16.1, **does not apply** to this case because (check one box below identifying why 16.1 does not apply):

☐ This is a class action or forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☒ This party is seeking a monetary judgment for more than $100,000.00 against another party, including any attorney fees, penalties or punitive damages, but excluding interest and costs (see C.R.C.P. 16.1(c)), **or**

☐ Another party has previously stated in its cover sheet that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

HOGAN & HARTSON LLP

*Original Signature of Erin M. Jensen on File at Offices of Hogan & Hartson LLP*

Date: February 19, 2010

s/ Erin M. Jensen
Erin M. Jensen, #39449
Eric S. Howard, # 36432
Two North Cascade Avenue, Suite 1300
Colorado Springs, CO 80903
Tel: (719) 448-5900
Fax: (719) 448-5922

***ATTORNEYS FOR PLAINTIFF KARL LIPPARD***